O’Neale, J.,
delivered the opinion of the Court.
3d. The objection to the admissibility of George Lever’s books, to prove cash advanced and spirits sold, vanishes when we look to the proof on which they were received in evidence. It appears that the items were read over to the plaintiff, and he was requested if he had any objection to make to any of them to state it. He objected to a few items, but not to the i-est. In this point of view, the books were admissible to show what items he admitted by not objecting to them, when he selected others as improper and objected to them. In another respect too, credit was given to the books by the plaintiff. He stated that he had only received of his money $365, and the charges on the books for money advanced to him corresponds, as the plaintiff’s counsel stated, within a very small surd. So I think, under the proof, the books were admissible; but not as falling exactly within the case of Sinclair and Kiddle v. Price, decided at *128 *1601 ^Ciolumbia, December Tern, 1832.* There the book received in evidence was the journal of an agent managing a country store *129 for his principal, who lived at a distance. It contained regular entries of cash remitted, expenses paid, cotton remitted, and services rendered. Both principal .and agent were dead, and nine-tenths of the items had been established by other proof. It was held that the journal was the best evidence of which the nature of the case was susceptible, and was therefore admitted. We are still satisfied of the correctness of that decision, but we are not disposed to extend it beyond the case to which it applies. In this case the plaintiff is alive, and the defendant may have his discovery, as he has had the benefit of an equivalent in his admission ; and this constitutes one reason why we will not decide this case on the authority of that. Another reason is, the books do not purport to be entries in the discharge of the agency.
7th. The Yth exception must have been sustained on the authority of the decision in the case of Sinclair and Riddle v. Price, decided at December Term, 1833, and reported in part in Hill’s Chan. Hep. 431, if in this case, as in that, the books had purported *to contain an account of all the moneys paid to or for the plaintiff. The answer L *130 here does not state, as that in the ease of Sinclair and Kiddle v. Price did, that the books contained an account of all payments to or for the plaintiff. The answer here states “that the said George would let the said Michael have small sums of money, but states that the said George Would charge him with the same in his account against the said Michael.” The preceding parts of the answer stated that the said George had paid away all the money which he received for the plaintiff. There is therefore nothing in the answer which would confine the defendant to the books. There is in this ease, by allowing the books and other proofs of payments to be adduced, np danger that the plaintiff will be twice charged for the same thing; for we have by this opinion excluded the charges which were or might have been paid by Michael out of the, money received by him from the defendant’s testator. In Sinclair and Kiddle v. Price, it was manifest that this double charging had occurred. This exception derives therefore no authority from that case ; and there is nothing in this case which makes it proper to confine the defendant, in discharging himself, to the entries on his testator’s books.
*ir21 *4th. The defendant’s 4th exception presents a very important -* legal question.
I will proceed to state the views which I have taken of the subject. The defendant’s testator was the agent of the plaintiff under very peculiar circumstances. The relation of father and son would seem to exclude an intention to commit wrong on the part of the former. So, too, the fact of the defendant’s imbecility would have furnished, ordinarily, a powerful inducement to his father, not only to see that others treated him rightly, but also to make him careful not to do him any wrong. I know Mr. Lever well, and I think it is due to him that I should say here that I am satisfied that he had too much Dutch honesty and integrity to take a willful advantage of any one, much less his own child.
The bill, drawn according to the plaintiff’s statement, and, I have no doubt, according to the truth, (for it is an old saying that children and fools will tell the truth,) states the nature and extent of the testator’s agency for the plaintiff in the following terms, to wit: “ That George Lever, late of, &c., the father of your orator, during his life, from the time your orator arrived at the age of twenty-one, assumed and exercised the cq-i entire control and *management of your orator’s estate, both real J and personal, in the character and capacity of a trustee, (or rather as his natural guardian,) alleging as a reason for so doing that your orator wras of so weak and imbecile mind as not to be capable of managing his estate for himself, which, your orator being conscious of his liability 'to be imposed upon by the frauds and devices of designing persons, as well from a want of education as from a weakness of intellect, and reposing most implicit confidence in his father, always permitted him so to do, with the express understanding between them, at the time your orator arrived of full age, and during the continuance of that relationship, that he, the said George, would keep a regular account of the receipts and expenditures thereof, and should the circumstances of your orator’s situation require the funds in his hands to be paid over before his death, he, the said George, would come to a full, fair, and final accounting and settlement with your orator, and pay over whatever balance might be in his hands ; but should no settlement take place between *131 them before the death of the said George, he would continue to act in the capacity aforesaid, until the time of his death, at which time your orator should be paid over such balance as might be remaining in his hands at that time.” This statement was, in legal effect, an agency or legal trust, to keep the money of the ^plaintiff and defray his debts . . and expenditures, and pay over the balance unexpended before or *- b4 after his death, on demand. In the former opinion of this Court in this case, it was held that until a demand made on the defendant’s testator to pay over the funds in his hands, and a refusal to do so, that the statute of limitations did not commence to run; and that there being no demand alleged, or proved to be made, until after the testator’s death, that the statute of limitations could not run. 1 Hill’s Chan. Hep. 62. The case, under these views, would seem to have no pretence to claim interest as of course. For the funds in the hands of the defendant’s testator are to be regarded as a mere deposit, upon which the plaintiff was at liberty to draw as he needed. It was no part of the duty of the defendant’s testator to let the money out to interest, and thus make interest. This is a trust between parties, who regulate it for themselves. The law prescribes no duty to the agent beyond the discharge of his trust according to the terms of his contract. In the cases of executors, administrators, guardians, and trustees, appointed by law, it is their duty generally to make interest; and hence, from this, but more especially from the fact of being required to make up their accounts annually, they are held to be generally liable for interest on annual balances. Cases, therefore, charging them with interest, have no application to this question.
Being an agency or trust ending only with the life of George Lever, ■ unless a demand had been sooner made for an account or settlement, I think that interest can only be allowed from a demand made on the executor for an account and settlement after the death of Mr. Lever; or, if no such demand can be proved, then from the filing of this bill.
In the case of Wright v. Hamilton, which was an action against a sheriff, who had been out of office for several years, for money collected as sheriff, it was held that until a demand made, the plaintiff was not entitled to interest. That decision proceeded upon the very footing that this case must occupy. The defendant was guilty of no default until he refused to pay over the money.
But it is contended, as I understand, that the use of the money by the defendant’s testator makes him liable for interest. This argument at first struck my mind with great force, and I was inclined to think it would govern the case. But I am satisfied, from subsequent examination and reflection, that unless the defendant’s ^testator actually made in- r*-i terest upon the plaintiff’s funds by loaning them out, or failed to L b pay during his lifetime the debts or expenses of Michael, to his injury or prejudice, he would not be liable for interest.
In the case of Williams v. Storrs, 6 John. C. R. 353, the defendant’ was the agent for parties residing out of the State of New York. He received their funds, and jlid not keep them separate from the funds which he was receiving and p^ihg away as agent; It was held that he was not liable for interest. Chancellor Kent said, “ it was sufficient if he kept the money safely, and paid it according to the request of the party entitled-to demand and receive.” In the case under consideration, this observa *132 tion of the Chancellor has a direct application, as will be seen by observing that George Lever must have kept, during his lifetime, the money of the plaintiff safely, for he paid, all his debts and expenses as he requested. I don’t mean to say that he kept the plaintiff’s money locked up, but that he was ready to pay as the plaintiff needed, which was exactly according to the terms of the agency.
The case of Lord Salisbury v. Wilkison, 8 Ves. Jr. 48, as stated by Lord Eldon, in the case of Lord Chedworth v. Edwards, is a direct authority for the defendant. In that ease Lord Thurlow held, “that under the circumstances, the defendant could not be affected by a demand of interest of the money he had in his hands, even supposing he employed it.” The circumstances of the case were, that the defendant, the steward of Lord Salisbury, had informed him from time to time of the sums of money in his hands, and had undertaken that there should be always a large sum in his hands, for which he would be responsible from time to time. In this ease, the plaintiff knew of the funds received by his father as he received them; and from the statement in his bill, the defendant was to be always ready, if the plaintiff’s situation should require it, to pay over the balance in his hands. The eases, in their circumstances controlling the allowance of interest, are almost identical.
There is another view of this part of the case. This was a debt payable on demand, and according to Schmidtz v. Limehouse, 2 Bail. 276, interest was not recoverable until demand made. I call it a debt notwithstanding it is recoverable in equity; for the defendant’s testator was liable for the balance left after auditing and allowing his accounts, as for so much money received to the use of the plaintiff. In connection -with *.. this view, I would remark, *that the plaintiff, in setting out the agency, does not pretend that interest was to be paid ; if it was to be paid in testator’s lifetime, the testator was to “ pay over whatever balance might be in his hands;” if not paid during his lifetime, the plaintiff was to be paid at his death, “ such balance as might be remaining in his hands at that time.” Under either of these statements of the agency, it is plain that, according to the terms of it, the balance of the money received was to be paid over. On the authority of the case of the Earl of Hardwicke v. Vernon, 14 Ves. 510, 511, I think under this statement of his case, the plaintiff cannot claim interest sooner than a demand of payment from the executor after the death of George Lever. We think therefore that this exception must be sustained and the report remodelled by striking out the interest in favor of both the plaintiff and the defendant, until a demand was made after the death of George Lever, or the filing of the bill. From one or the other of these times, the plaintiff is entitled to interest on the balance in hand at the death of George Lever.
5th. The defendant’s 5th exception is untenable, "in the case of Cripps v. The Assignees of Charles Pinckney, cited and stated in Muckenfus v. Heath, 1 Hill’s Chan. Rep. 182-3, the Court, speaking of the claim of commissions, says, “ but the private agent or assignee of an individual is not entitled to any such claim, unless he makes it part of his contract. ” This decides the point before us, and when it is recollected that the defendant’s testator accounts without interest, there can be no hardship in requiring him to do the business of a weak-minded son, without compensation by way of commissions.

 Sinclair & Kiddle, Assignees of George Keenan, v. Admr’s of Thomas Price. The plaintiffs, as the assignees of George Keenan, filed their bill for an account against the defendants, as administrators of Thomas Price, alleging that Keenan, who resided in Charleston, furnished goods to a large amount to Price, living in Spartanburg, to be retailed by Price, as his agent. The defendants, in their answer, admit .the agency, but state that they are unable, from any books of their intestate, to say what amount of goods he received, or on what advance he sold. They set out, however, the credit and cash sales, and the stock of goods on hand. They .further state that Price kept a journal of his remittances and disbursements to and on account of Keenan, the amount of which is eight thousand seven hundred and forty-eight dollars.
.On the reference which was ordered to make up the accounts, the defendants offered Price’s journal in evidence, after having first proved, by other evidence, the items contained in it, to the amount of seven thousand four hundred and four dollars, of the eight thousand seven hundred and forty-eight set out therein. The Commissioner rejected the journal as evidence. On appeal to this Court, on this point, the following opinion of the Court was delivered:—
O’Neall, J. Ought the journal or cash-book of the defendant’s intestate to be received, as evidence of the remittances and disbursements contained in it? This question is one of great novelty. The affirmative of it is an extension of the principle “that merchants’ books, from necessity, are evidence of the delivery of goods,” to all transactions between principal and agent, when the books of the latter are regularly kept. To this extent, perhaps, the rule ought never to be laid down. But with some qualifications, I think, the books of the agent ought to be received. If the entries are made in the usual course of business, then, I apprehend, they are evidence. — 1 Stark, on Ev. 73. What was the usual course of business in the case before us? The defendant’s intestate was to sell, defray expenses, and remit, in cash or produce, the proceeds of the sales. It is both usual and proper, that he should keep an account of sales, disbursements, and remittances. Between two honest men, this account would always constitute' the guide to a settlement. If the principal' is not disposed to admit it from necessity, it appears to me it should be at least evidence in favor of the agent, until there is some showing by which a doubt of its correctness can be raised. For, in a transaction between principal and agent, it is not to be expected that a witness can be produced to prove every dollar paid for the expenses of the business, or for every sum remitted. Here then exists the same necessity to receive the books of the agent in evidence, as in the case of merchants and shop-keepers. There is, however, another consideration, of great weight, growing out of the relative situation of the parties. The principal holds out his agent to the world as a man in whom he places such trust and confidence, that he is willing to be bound by all of his acts done within the agency committed to him. This is at least a legal good character given to the agent by the principal, as to all acts between them. It is saying, on his part, he is trustworthy, and with that character, his books ought to be evidence against his principal until it appears he has forfeited it by abusing the confidence reposed in him. But, in the case before us, a still stronger circumstance may be adduced why the books of the agent should be received against the principal. It will be recollected that he sold goods on credit for the use of his principal. His books would have been evidence for his principal, against every one who bought goods at the store. Could the principal be allowed, to say: “I will charge A. by the books of my agent; and yet, (when he is called on to account to me,) I will reject the books of the same agent, as not trustworthy, against me?” I should think not. The principle that the books of the agent, if the entries are made in the usual course of business, are evidence against the principal, is, I think, well sustained by the case of the Union Bank v. Knapp, 3 Pick. Rep. 96, which I have taken from a note to 1 Stark on Ev. 73. In that case, which was for money had and received by the bank against a depositor who had overdrawn, it was held that the books of the bank were competent evidence to show receipts and payments of money; and that if the clerk who made the entries be dead, or insane, his handwriting may be proved. From this case, I extract two principles, on which the decision turned: 1st. That the entries were in the usual course of business; 2d. That the bank was the agent of the depositor to receive and pay out *129 his deposits. Both of these are applicable to the case under consideration. Other circumstances, however, in this case, go to support the book of the defendant’s intestate. In an early stage of the case, this book was directed by a decretal order to be excluded. It contained charges during several years, for disbursements and remittances to the amount of eight thousand seven hundred and forty-eight dollars and seventy-five cents; the defendants succeeded, by other proof, in establishing seven thousand four hundred and four dollars out of this sum. This is strong corroborating evidence of the general correctness of the book; and when both the principal and agent are dead, furnishes at least such reasonable evidence of the correctness of the charges as to authorize the Commissioner to receive it in evidence, and give it such weight as on a careful examination of the entries he may think it entitled to. If, upon such examination, he should find nothing in the book, or find, evidence aliunde to discredit it, then the defendant should be allowed the balance of the disbursements and remmittanees contained in it, amounting to one thousand three hundred and forty-four dollars seventy-five cents, and which they were unable otherwise to prove.
The case was again brought before this Court in January, 1834, on the question, among many others, whether the defendants should be allowed any other charges than those contained in the journal. On which Mr. Justice O’Neall delivered the following opinion of the Court:—
In another part of our opinion, we decided that the defendants should be allowed credit for all the charges contained in the journal of Price. It is now insistod, by the plaintiffs, that the defendants should not be allowed to make any other charges: and I am 'satisfied that this is the correct mode of allowing the defendants credit for disbursements and remittances made, and services rendered by their intestate on account of his agency. This journal, or cash-book, professes to be an account of all the debits against the store, for disbursements and remittances made and services' rendered by the intestate. His charges were made while .the transactions were fresh; it is not to be believed that he entered part, and omitted part. These were his memoranda, to enable him to settle with the principal; and it would be much more reasonable to conclude, that he had charged too much instead of too little. This view is sustained by the defendants, in their answer, for they say, “that the said Price likewise left a book, in which he kept an account of all Ms remittances and disbursements to, and on account of said Keenan, including Ms wages for his own services.’’ After allowing the book as evidence of every charge contained in it, it would be giving to the defendants a great and unconscientious advantage, (and one which I know they have not asked, and would not, under any circumstances, ask to be allowed,) to permit them to gather up every charge, which, from the recollection of witnesses, might slightly vary from Price’s entries, and allow such in addition. The allowance, however, of the book, as evidence of the charges contained in if, excludes necessarily all other evidence on these subjects.